IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

CHERYL LYNN MCINTYRE,  )
    *pro se* Plaintiff,  )
                 )
        v.  )       Civil No. 3:14cv449 (DJN)
                 )
CITY OF CHESAPEAKE,  )
    Defendant.  )
——————————————————)

### MEMORANDUM OPINION

This matter comes before the Court by consent pursuant to 28 U.S.C. § 636(c)(1) on Defendant's Motion for Summary Judgment (ECF No. 22). In this case, the Court must determine whether the City of Chesapeake ("Defendant") discriminated against Cheryl McIntyre ("Plaintiff") based on her race and gender in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). For the reasons that follow, the Court GRANTS Defendant's Motion (ECF No. 22).

## I.     BACKGROUND

Plaintiff alleges discrimination under Title VII, arguing that Defendant's decision to promote a white male over Plaintiff constitutes race and gender discrimination. (Def.'s Mem. of Law in Supp. of Mot. for Summ. J. ("Def.'s Mem.") (ECF No. 24) at 1, 9; Pl.'s Resp. in Opp'n to Mot. for Summ. J. ("Pl.'s Resp.") (ECF No. 27) at 1.) Defendant argues that it had a legitimate and nondiscriminatory rationale for not promoting Plaintiff and that Plaintiff has failed to produce any evidence that Defendant's asserted rationale was merely pretextual. (Def.'s

Mem. at 1.) The Court determines that the undisputed facts are as follows.[1]

Plaintiff graduated from Norfolk State University in 1989 with a bachelor's degree in building construction technology. (Portions of Tr. of Dep. of Cheryl McIntyre ("McIntyre Dep.") (ECF No. 24-1) 5:24-6:8, Feb. 25, 2015.) After graduating, Plaintiff worked as a consultant at a private construction firm in 1989. (McIntyre Dep. 10:12-15.) In 1990, Plaintiff left her job as a private consultant and took a job as a construction inspector for the Virginia Department of Transportation ("VDOT"). (McIntyre Dep. 10:14.) In this role, Plaintiff inspected the technical aspects of road construction projects. (McIntyre Dep. 15:9-16:8.) As she gained experience, Plaintiff sometimes supervised small projects and helped to train new inspectors, but she was not involved in employee evaluations or personnel decisions. (McIntyre Dep. 16:9-18:6.)

In 2004, after fourteen years with VDOT, Plaintiff left to take a position with Defendant. (McIntyre Dep. 14:5-24.) Defendant hired Plaintiff as a Construction Inspector II in the Engineering Division of the Public Works Department. (McIntyre Dep. 20:15-21:5.) Plaintiff's duties included inspecting roadway construction and maintenance projects, as well as performing some customer service duties. (McIntyre Dep. 21:13-22:18.) At that time, Plaintiff's supervisor was Ronald Kelvin ("Kelvin"), who held the position of Construction Inspector Supervisor ("CIS"). (McIntyre Dep. 22:19-23.) Plaintiff did not have any issues with Kelvin during the

---

[1]     Pursuant to Local Rule 56(B), a brief in support of a motion for summary judgment must contain a section listing all undisputed material facts. E.D. Va. Loc. R. 56(B). Briefs in response to such motions must contain a section listing those facts "as to which it is contended that there exists a genuine issue necessary to be litigated." *Id.* In its memorandum in support of its motion for summary judgment, Defendant included a list of undisputed facts. (Def.'s Mem. at 2-8.) In her response, Plaintiff did not identify any disputed facts. (Pl.'s Resp. at 1-2; Def.'s Reply to Pl.'s Resp. ("Def.'s Reply") (ECF No. 28) at 1-2.) Accordingly, the Court accepts Defendant's recitation of the facts as undisputed. Nevertheless, the Court construes the facts in the light most favorable to Plaintiff, the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

time that he supervised her. (McIntyre Dep. 23:5-7.) In approximately 2008, Jeff Andleton

("Andleton") replaced Kelvin as Plaintiff's supervisory CIS. (McIntyre Dep. 23:2-12.) Plaintiff

did not have issues getting along with Andleton. (McIntyre Dep. 23:23-24.) Plaintiff testified

during her deposition that she had no knowledge of comments on her performance evaluations,

from Andleton or other supervisors, related to her race or gender. (McIntyre Dep. 45:3-14.)

   In approximately July 2008, the Director of Public Works, Eric J. Martin ("Director

Martin"), created a new Contractual Services Section within the Department of Public Works.

(Aff. of Eric J. Martin ("Martin Aff.") (ECF No. 24-2) ¶¶ 1-3.) Inspectors already employed by

the Engineering Division were to staff this new section and would be responsible for overseeing

Defendant's services contracts for small construction projects that did not involve road

construction. (Martin Aff. ¶ 3.) Director Martin assigned Project Manager Robert Matkins

("Matkins") to oversee the Contractual Services Section and CIS Kelvin to supervise inspectors

in the section. (Martin Aff. ¶ 4.) Director Martin solicited volunteers from the Engineering

Division to transfer to the Contractual Services Section, including Plaintiff. (Martin Aff. ¶ 5.)

Plaintiff declined to volunteer for a transfer at that time. (Martin Aff. ¶ 5; McIntyre Dep. 26:10-

18.) Steven Bonniville ("Bonniville"), a Construction Inspector II employed in the Engineering

Division with Plaintiff, volunteered and transferred to the Contractual Services Section.

(McIntyre Dep. 41:7-13.) At an unspecified later date, Plaintiff mentioned her interest in

transferring to the Contractual Services to Director Martin, but Plaintiff neither made a formal

request nor took any other action to effectuate a transfer. (McIntyre Dep. 41:1-13.)

   In June 2010, Kelvin retired from his employment with Defendant. (Martin Aff. ¶ 6.)

Around that time, Plaintiff learned that Kelvin's CIS position in the Contractual Services Section

would soon be available. (McIntyre Dep. 42:13-43:3.) After consulting with Defendant's

3

Department of Human Resources, Director Martin posted an advertisement and job description for the CIS position. (Martin Aff. ¶ 7.) The job description indicated that to be qualified for the position, candidates must possess an "[a]ssociate's degree, vocational technical degree, or specialized training equivalent to satisfactory completion of two years of college education with an emphasis in civil engineering or a closely related field." (Martin Aff. ¶ 8; McIntyre Dep. Ex. 3 ("Job Description")[2] at 1.) According to Director Martin, this was a standard requirement for mid-level technical supervisor positions. (Martin Aff. ¶ 8.) Plaintiff knew of the Job Description at the time that she applied for the CIS position on August 2, 2010. (McIntyre Dep. 57:23-58:7, 60:13-61:11 & Ex. 5 ("Plaintiff's Application")[3] at 1.)

In accordance with Defendant's Administrative Regulation 2.41, Defendant's Department of Human Resources selected five qualified applicants for consideration for the open CIS position: Plaintiff (an African-American woman), Steven Bonniville (a white man), Douglas Segura (an Asian-American man), Kurt Leidig (a white man) and Nicholas Ilas (an Asian-American man). (Martin Aff. ¶ 9 & Ex. 1 ("Administrative Regulation 2.41")[4] at 1-2; McIntyre

---

[2]   Defendant attached the Job Description as Exhibit 3 to the McIntyre Deposition (ECF No. 24-1). This exhibit is three pages long and is not separately paginated. For purposes of this Opinion, therefore, the Court refers to the pages of the Job Description as though they were numbered one through three.

[3]   Defendant attached Plaintiff's Application for the CIS position as Exhibit 5 to the McIntyre Deposition (ECF No. 24-1). This exhibit is four pages long and is not separately paginated. For purposes of this Opinion, therefore, the Court refers to the pages of Plaintiff's Application as though they were numbered one through four.

[4]   Defendant attached Administrative Regulation 2.41 as Exhibit 1 to the Martin Affidavit (ECF No. 24-2). This exhibit is separately paginated, and the Court cites to Administrative Regulation 2.41 according to that pagination.

Dep. Ex. 7 ("Guide to Employee Selection")[5] at 1-2.)  Plaintiff was qualified based on her bachelor's degree in construction building technology and her twenty-one years of experience as a construction inspector, including six years working for Defendant in the Engineering Department. (McIntyre Dep. 6:6-8; 10:10-21, 14:25-18:6, 20:15-22.)  Defendant's Department of Human Resources deemed Bonniville a qualified applicant based on his thirty-plus years of experience in construction, surveying and construction inspection, as well as his completion of numerous technical and supervisory courses while employed by Defendant. (Martin Aff. ¶ 10 & Ex. 2 ("Bonniville's Application")[6] at 1-3, Ex. 3 ("Bonniville's Training Record")[7].) Defendant's Department of Human Resources invited the five qualified applicants to interview for the CIS position. (Martin Aff. ¶ 10.)

As required by Defendant's policy, a panel of individuals was selected to conduct the interviews. (Martin Aff. ¶ 11.) The three-person panel included Matkins, William Collins, Sr., ("Collins") and Kim Logan ("Logan"). (Martin Aff. ¶ 11.)  Matkins, a white man, worked as Plaintiff's supervisor before becoming head of the Contractual Services Section. (Martin Aff. ¶ 12.) Plaintiff did not have any problems with Matkins. (McIntyre Dep. 69:3-5.) Collins, an African-American man, represented the Customer Service Division of Public Works. (Martin Aff. ¶ 13; McIntyre Dep. 71:6-8.) Logan, an African-American woman, represented Defendant's Human Resources Department. (Martin Aff. ¶ 14.)

---

[5]     Defendant attached the Guide to Employee Selection as Exhibit 7 to the McIntyre Deposition (ECF No. 24-1).  This exhibit is separately paginated, and the Court cites to the Guide to Employee Selection according to that pagination.

[6]     Defendant attached Bonniville's Application as Exhibit 2 to the Martin Affidavit (ECF No. 24-2). This exhibit is separately paginated, and the Court cites to Bonniville's Application according to that pagination.

[7]     Defendant attached Bonniville's Training Record as Exhibit 3 to the Martin Affidavit (ECF No. 24-2).

The panel interviewed the five selected candidates, and each interviewer scored each interviewee. (Martin Aff. ¶ 15.) Bonniville achieved the highest interview score of the five candidates, while Plaintiff's score ranked third. (Martin Aff. ¶ 15; McIntyre Dep. Ex. 4 ("Interview Summary")[8] at 1-17.) As required under Administrative Policy 2.41, the interview panel forwarded the interview scores to the Department of Human Resources. (Martin Aff. ¶ 16.) Ultimately, Defendant's Department of Human Resources selected and approved Bonniville for the position. (Martin Aff. ¶ 16.) In late August or early September 2010, Plaintiff received a letter informing her that she was not selected for the CIS position. (McIntyre Dep. 74:19-24.)

After Plaintiff learned that Bonniville was selected for the position, she sought to use Defendant's grievance process to challenge Bonniville's selection, arguing that he was not qualified for the CIS job. (Martin Aff. ¶ 17; McIntyre Dep. 92:9-12.) Plaintiff believed that she was the most qualified applicant for the position based on her bachelor's degree and years of experience working for VDOT and Defendant, but felt that the interview panel did not properly weigh her VDOT experience in its decision-making process. (McIntyre Dep. 77:19-78:2, 79:11-25, 81:5-8.) As required under Defendant's grievance procedure, Director Martin reviewed the selection process, including the Job Description, the applications of the five qualified applicants, the interview questions and each applicant's interview scores, and interviewed the three members of the interview panel. (Martin Aff. ¶ 18.) Based on his review, Director Martin concluded that Bonniville's selection for the CIS position was "fair, legitimate,

---

[8]     Defendant attached the Interview Summary, listing the interview questions and each interviewer's score for the top three candidates, as Exhibit 4 to the McIntyre Deposition (ECF No. 24-1). This exhibit is seventeen pages long and is not separately paginated. For purposes of this Opinion, therefore, the Court refers to the pages of the Interview Summary as though they were numbered one through seventeen.

nondiscriminatory, and in accordance with City policy and procedure." (Martin Aff. ¶ 19.)[9]

## II.   STANDARD OF REVIEW

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The relevant inquiry at the summary judgment stage analyzes "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby, Inc.*, 477 U.S. at 251-52. When reviewing a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party. *Id.* at 255. The Court cannot weigh the evidence; it must simply determine whether a genuine issue exists for trial. *Greater Balt. Ctr. For Pregnancy Concerns v. Baltimore*, 721 F.3d 264, 283 (4th Cir. 2013) (quoting *Liberty Lobby, Inc.*, 477 U.S. at 249).

Once the movant properly makes and supports a motion for summary judgment, the burden shifts to the opposing party to show that a genuine dispute of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise

---

[9]     Defendant stated in its brief that Plaintiff fails to make clear whether she alleges a hostile work environment claim in her Complaint. (Def.'s Mem. at 14 n.2.) In an abundance of caution, Defendant included facts and argument pertinent to such a claim in its brief in the event that the Court deemed it alleged. Although mindful of the requirement that *pro se* complaints be "liberally construed," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)) (internal quotation marks omitted), the Court nevertheless concludes that Plaintiff failed to allege a cognizable hostile work environment claim. "Principles requiring generous construction of *pro se* complaints are not, however, without limits . . . . It does not require [district] courts to conjure up questions never squarely presented to them. District judges are not mind readers." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). Because the Court finds that Plaintiff made no attempt to allege a cognizable hostile work environment claim or to argue such a claim in her response, consideration of Defendant's list of undisputed facts and argument regarding the hostile work environment claim is unnecessary.

properly supported motion for summary judgment; the standard requires "that there be no *genuine* issue of *material* fact." *Liberty Lobby, Inc.*, 477 U.S. at 247. A genuine issue of material fact arises only when the evidence, viewed in the light most favorable to the nonmoving party, sufficiently allows a reasonable jury to return a verdict in that party's favor. *Id.* at 248. To defeat an otherwise properly supported motion for summary judgment, the non-moving party must rely on more than conclusory allegations, "mere speculation," the "building of one inference upon another," the "mere existence of a scintilla of evidence" or the appearance of some "metaphysical doubt" concerning a material fact. *Lewis v. City of Va. Beach Sheriff's Office*, 409 F. Supp. 2d 696, 704 (E.D. Va. 2006) (citations omitted). The Court must enter summary judgment against a party that, "after adequate time for discovery and upon motion, . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

## III.    DISCUSSION

Defendant moves for summary judgment on the basis that Plaintiff has failed to produce any evidence that Defendant's rationale for not promoting her to the CIS position served as pretext for race or gender discrimination in violation of Title VII. (Def.'s Mem. at 1.) Plaintiff argues that her qualifications, namely her bachelor's degree in building construction technology and her relevant work experience, were superior to Bonniville's qualifications and that she was the most qualified candidate for the position. (Pl.'s Resp. at 1-2.) Therefore, Plaintiff reasons, Defendant's decision to promote Bonniville to CIS instead of her could only have been

motivated by discriminatory intent. (Pl.'s Resp. at 1-2.)

    A.  Title VII Analytical Framework

    "Title VII prohibits all discrimination in employment based upon race, sex, and national

origin." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 259 (1981).  A plaintiff opposing

summary judgment in a Title VII case may prove her claim in one of two ways.  *Diamond v.*

*Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005).  "First, . . . she may establish a

claim for discrimination 'under the ordinary standards of proof by direct or indirect evidence

relevant to and sufficiently probative of the issue.'" *Harris v. Rumsfeld*, 428 F. Supp. 2d 460,

465 (E.D. Va. 2006) (quoting *EEOC v. Clay Printing Co.*, 955 F.3d 936, 940 (4th Cir. 1992))

(citing *Diamond*, 416 F.3d at 318; *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277,

284 (4th Cir. 2004); *Goldberg v. B. Green & Co.*, 836 F.2d 845, 847 (4th Cir. 1988)).  Second,

"a Title VII plaintiff may proceed under the burden-shifting framework established by the United

States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Id.* (citing

*Diamond*, 416 F.3d at 318; *Hill*, 354 F.3d at 285; *Clay Printing Co.*, 955 F.2d at 940; *Goldberg*,

836 F.2d at 847).  Because Plaintiff presents neither direct nor indirect evidence of

discriminatory intent, the Court analyzes Plaintiff's disparate treatment claim under the

*McDonnell Douglas* burden-shifting framework.

    B.  Plaintiff fails to establish her discrimination claim for failure to promote.

    "To prevail on her disparate treatment claim of failure to promote, [Plaintiff] must prove

that she was treated less favorably than the other applicants because of her race" or gender.

*Harris*, 428 F. Supp. 2d at 466 (citing *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d

248, 268 (4th Cir. 2005); *Carter v. Ball*, 33 F.3d 450, 456 n.7 (4th Cir. 1994)).  Under the

*McDonnell Douglas* approach, Plaintiff must first establish, by the preponderance of the

evidence, a *prima facie* case of discrimination. *Burdine*, 450 U.S. at 252-53 (discussing *McDonnell Douglas*, 411 U.S. at 802). If Plaintiff successfully establishes her *prima facie* case, then the burden shifts to Defendant to articulate some legitimate, nondiscriminatory reason for denying the promotion to Plaintiff. *Id.* at 253; *Harris*, 428 F. Supp. 2d at 466 (citing *Anderson*, 406 F.3d at 268; *Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 760 (4th Cir. 1998)). Once Defendant rebuts Plaintiff's *prima facie* case by articulating such a reason, the burden shifts back to Plaintiff to prove by the preponderance of the evidence that Defendant's proffered explanation is a mere pretext for discrimination. *Burdine*, 450 U.S. at 253 (citing *McDonnell Douglas*, 411 U.S. at 804); *Diamond*, 416 F.3d at 318 (citing *Hill*, 354 F.3d at 285). This final step "merges with [Plaintiff's] ultimate burden of persuading the court that she has been the victim of intentional discrimination," which remains with Plaintiff at all times. *Burdine*, 450 U.S. at 256; *Diamond*, 416 F.3d at 319 (citing *Burdine*, 450 U.S. at 253). The Court considers each step in turn.

      1.  Plaintiff establishes a *prima facie* case for race and gender discrimination.

Defendant concedes that Plaintiff establishes the elements of her *prima facie* case. "The burden of establishing a *prima facie* case of disparate treatment is not onerous." *Burdine*, 450 U.S. at 253. Plaintiff must show that (1) she is a member of a protected group; (2) she applied for the position at issue; (3) she was qualified for that position; and (4) she was rejected for that position under circumstances giving rise to an inference of unlawful discrimination. *Harris*, 428 F. Supp. 2d at 466 (citing *Anderson*, 406 F.3d at 268; *Williams v. Giant Food Inc.*, 370 F.3d 423, 430 (4th Cir. 2004); *Lowery*, 158 F.3d at 760); *see also Burdine*, 450 U.S. at 253 n.6 (citing *McDonnell Douglas*, 411 U.S. at 802) (applying *McDonnell Douglas* framework). To satisfy the fourth prong, Plaintiff need only show that the position was filled by an applicant who was not a

member of the protected group. *Carter*, 33 F.3d at 458 (citing *Patterson v. McLean Credit Union*, 491 U.S. 164, 186-87 (1989); *Blue v. U.S. Dep't of the Army*, 914 F.2d 525, 537 (4th Cir. 1990)).

Plaintiff is an African-American woman. (Def.'s Mem. at 10.)  She applied for the CIS position and was qualified for the job. (Def.'s Mem. at 10.)  Defendant ultimately hired Bonniville, a white man, to fill the CIS position. (Def.'s Mem. at 10.)  Because Plaintiff has carried her initial burden of establishing a *prima facie* case of race and gender discrimination, the burden shifts to Defendant to articulate some legitimate, nondiscriminatory reason for denying the promotion to Plaintiff. *Burdine*, 450 U.S. at 253.

> 2.  Defendant rebuts Plaintiff's *prima facie* case by articulating a legitimate, nondiscriminatory reason for declining to promote Plaintiff to CIS.

Although Defendant concedes that Plaintiff has established her *prima facie* case of race and gender discrimination, Defendant contends that it had a legitimate, nondiscriminatory reason for not promoting Plaintiff. (Def.'s Mem. at 10-12.)  In doing so, Defendant readily carries its burden of producing evidence of a legitimate, nondiscriminatory rationale for its decision not to promote Plaintiff to CIS.

Once established, "the *prima facie* case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Burdine*, 450 U.S. at 254.  This presumption "places upon the defendant the burden of producing an explanation to rebut the *prima facie* case — *i.e.*, the burden of 'producing evidence' that the adverse employment actions were taken 'for a legitimate, nondiscriminatory reason.'" *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993) (quoting *Burdine*, 450 U.S. at 254).  To carry this burden, "the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection." *Burdine*, 450 U.S. at 255.  Thus, since Plaintiff has successfully established her *prima facie* case,

Defendant must produce evidence that it promoted Bonniville over Plaintiff for reasons unrelated to her race or gender to overcome the presumption of discrimination. *Id.* at 253 (quoting *McDonnell Douglas*, 411 U.S. at 802); *Harris*, 428 F. Supp. 2d at 466 (citing *Anderson*, 406 F.3d at 268; *Lowery*, 158 F.3d at 760).

In this case, Defendant proffers that it promoted Bonniville over Plaintiff, because Bonniville attained the highest interview scores of the five qualified applicants who interviewed for the CIS position. (Def.'s Mem. at 11-12.) Defendant asserts that its "reason for selecting Bonniville was consistent with its internal policies and procedures which themselves were designed to ensure a legitimate and nondiscriminatory process for filling vacancies from internal candidates." (Def.'s Mem. at 12.)

To fill the open CIS position, Defendant engaged in a multi-step selection process independently supervised by the Department of Human Resources as required by Administrative Regulation 2.41. (Martin Aff. ¶¶ 7-9; Administrative Regulation 2.41; Guide to Employee Selection at 1-3.) Director Martin posted the Job Description listing the prerequisites that applicants must possess to qualify for consideration. (Martin Aff. ¶¶ 7-8; Job Description.) These requirements included, in pertinent part, an "[a]ssociate's degree, vocational technical degree, or specialized training equivalent to satisfactory completion of two years of college education with an emphasis in civil engineering or a closely related field." (Martin Aff. ¶ 8; Job Description at 1.)

In accordance with Administrative Regulation 2.41, Defendant's Department of Human Resources determined that Plaintiff and four other applicants satisfied the educational and experiential prerequisites for the position and were qualified to advance to the interview stage of the selection process. (Martin Aff. ¶¶ 9-10; Guide to Employee Selection at 1-2.) Plaintiff's

12

qualifications included a bachelor's degree in building construction technology and twenty-one years of experience as a construction inspector, including approximately six years working in Defendant's Engineering Department. (McIntyre Dep. 6:6-8; 10:10-21, 14:25-18:6, 20:15-22; Plaintiff's Application at 1-4.) Bonniville's qualifications included numerous technical certifications and supervisory courses over the course of his employment with Defendant and more than thirty years of experience working for Defendant in construction, surveying and construction inspection. (Martin Aff. ¶ 10; Bonniville's Application at 1-3; Bonniville's Training Record.) Further, Bonniville had worked in the Contract Services Section since its creation in 2008. (McIntyre Dep. 41:7-13.)

Defendant selected three diverse and qualified employees — an African-American woman, a white man and an African-American man — to interview the five applicants. (Martin Aff. ¶ 11.) The panel asked the five candidates the same set of questions and individually scored their responses to each question. (Martin Aff. ¶ 15.) Bonniville earned the highest total interview score of the five applicants; Plaintiff ranked third. (Martin Aff. ¶ 15; Interview Summary at 1-17.) The Department of Human Resources reviewed the interview scores and selected Bonniville for the CIS position. (Martin Aff. ¶ 15.) The selection process for the CIS position was carried out as required under Defendant's own hiring regulation, the stated purpose of which is to "ensure[] that all applicants have an equal opportunity to compete for open positions on the basis of their knowledge, skills, and abilities." (Martin Aff. ¶¶ 7-19; Administrative Regulation 2.41 at 1.)

Defendant provides ample support for its decision to promote Bonniville, including the affidavit of Director Martin, Administrative Regulation 2.41, the Guide to Employee Selection, the Job Description, Plaintiff's Application, Bonniville's Application, Bonniville's Training

13

Record and the Interview Summary. (Def.'s Mem. at 11-12; Martin Aff. ¶¶ 8-15.) This supporting documentation clearly establishes that although Plaintiff and Bonniville were both qualified for the CIS position, Defendant promoted Bonniville over Plaintiff for reasons unrelated to race and gender. Specifically, Defendant promoted Bonniville over Plaintiff, because Bonniville achieved the highest score of the five applicants during the interview process, whereas Plaintiff only ranked third. Thus, Defendant has successfully rebutted the presumption of discrimination by articulating a valid and nondiscriminatory reason for declining to promote Plaintiff to CIS.

> 3. Plaintiff fails to prove that Defendant's reason for not promoting Plaintiff was a mere pretext for discrimination.

Defendant next argues that, because Plaintiff fails to show that Defendant's asserted reason for not promoting her constitutes a mere pretext for race and gender discrimination, the Court must enter summary judgment in Defendant's favor. (Def.'s Mem. at 12-14.) Plaintiff simply responds that she possessed superior qualifications for the CIS position. (Pl.'s Resp. at 1-2.) Consequently, Plaintiff fails to carry her burden of establishing pretext.

Once Defendant rebuts Plaintiff's *prima facie* case by articulating a legitimate and nondiscriminatory reason for its decision not to promote her, "the *McDonnell Douglas* framework — with its presumptions and burdens — disappear[s], and the sole remaining issue [is] discrimination *vel non*." *Diamond*, 416 F.3d at 318 (alteration in original) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142-43 (2000)) (internal quotation marks omitted). To prevail on her claim, therefore, Plaintiff must prove by a preponderance of the evidence that Defendant's proffered explanation serves as a mere pretext for discrimination. *Burdine*, 450 U.S. at 253 (citing *McDonnell Douglas*, 411 U.S. at 804); *Diamond*, 416 F.3d at 318 (citing *Hill*, 354 F.3d at 285). "A plaintiff alleging a failure to promote can prove pretext by

showing that [she] was better qualified, or by amassing circumstantial evidence that otherwise undermines the credibility of the employer's stated reasons." *Hux v. City of Newport News*, 451 F.3d 311, 315 (4th Cir. 2006) (quoting *Heiko v. Colombo Savings Bank, F.S.B.*, 434 F.3d 249, 259 (4th Cir. 2006)) (alteration in original) (internal quotation marks omitted). "The general standards for summary judgment naturally inform any assessment of whether a plaintiff has provided sufficient evidence of pretext such that her case may proceed to trial." *Id.* (citing *Anderson*, 406 F.3d at 272; *Mereish v. Walker*, 359 F.3d 330, 339 (4th Cir. 2004)).

Employers have "discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria." *Burdine*, 450 U.S. at 259. Thus, when considering whether Plaintiff has established pretext, the Court must "assess relative job qualifications based on the criteria that the employer has established as relevant to the position in question." *Heiko*, 434 F.3d at 259 (citing *Anderson*, 406 F.3d at 269). Plaintiff "cannot establish her own criteria for judging her qualifications for the promotion. She must compete for the promotion based on the qualifications established by her employer." *Anderson*, 406 F.3d at 269. To that same end, Plaintiff "cannot simply compare herself to other employees on the basis of a single evaluative factor artificially severed from the employer's focus on multiple factors in combination." *Hux*, 451 F.3d at 315 (citing *Anderson*, 406 F.3d at 271); *Diamond*, 416 F.3d at 319-20. Further, Plaintiff's own perceptions of her qualifications are irrelevant — "'it is the perception of the decision maker which is relevant,' not the self-assessment of the plaintiff." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960-61 (4th Cir. 1996) (quoting *Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir. 1980)).

In this case, despite the undisputed evidence that Bonniville was selected for promotion because he earned the highest interview score of the five candidates who interviewed, Plaintiff

asserts that she was the most qualified applicant for the CIS position. (Pl.'s Resp. at 1-2.) Indeed, the entire basis of Plaintiff's claim rests upon her belief that her academic credentials and work experience made her a superior candidate to Bonniville. (Pl.'s Resp. at 1-2.) Promoting her to CIS, Plaintiff argues, "would have been [Defendant's] perfect opportunity of showing fairness in the workplace." (Pl.'s Resp. at 2.) The parties do not dispute that the prerequisites for the CIS position included an "[a]ssociate's degree, vocational technical degree, or specialized training equivalent to satisfactory completion of two years of college education with an emphasis in civil engineering or a closely related field" at the time that Plaintiff applied for the position. (McIntyre Dep. 57:23-58:11.) Further, neither party disputes that Defendant's Department of Human Resources determined that Bonniville satisfied this requirement by virtue of his extensive experience working for Defendant in the fields of construction, surveying and construction inspection, and that Plaintiff satisfied this requirement by virtue of her bachelor's degree. (Def.'s Mem. at 13 (citing Martin Aff. ¶ 10; Bonniville's Application at 1-3; Bonniville's Training Record).) Therefore, both Bonniville and Plaintiff satisfied the minimum educational and experiential requirements for the CIS position.

But Defendant's decision to promote Bonniville rather than Plaintiff was not based on their relative academic achievements. Rather, Defendant proffers that it promoted Bonniville, because he scored higher than the other four applicants on his interview, whereas Plaintiff ranked third out of five. (Def.'s Mem. at 11-14.) As discussed above, Defendant has produced ample evidence to support this assertion. (Def.'s Mem. at 11-12.) As the Fourth Circuit noted in *Evans v. Technologies Applications & Service Co.*, "[j]ob performance and relative employee qualifications are widely recognized as valid, non-discriminatory bases for any adverse employment decision." 80 F.3d at 960. "Interview scores are an important tool that employers

use to make all sorts of hiring decisions, and [the court] may not lightly overturn the reasonable conclusions an employer reaches after actually meeting with a candidate face-to-face." *Hux*, 415 F.3d at 319.

Defendant's decision to promote Bonniville to CIS after he earned the top interview score suggests that the very purpose of the interview was to determine who among the qualified applicants was *most* qualified for the position. *See Harris*, 428 F. Supp. 2d at 468 ("The purpose of the interview itself was to assess the relative skills of the applicants."). When Defendant has produced evidence to support its proffer that it promoted Bonniville based on his superior interview performance, Plaintiff cannot reframe the selection criteria to make it more favorable for herself. *Hux*, 415 F.3d at 315 (citing *Anderson*, 406 F.3d at 271); *Anderson*, 406 F.3d at 269; *Diamond*, 416 F.3d at 319-20. Indeed, Plaintiff offers nothing more than her own assessment of her credentials in support of her argument that Defendant's decision to promote Bonniville instead of her was the product of discriminatory intent. Because it is Defendant's assessment of Bonniville's and Plaintiff's relative qualifications that controls — not Plaintiff's — the Court finds that Plaintiff fails to show that Defendant's proffered reason for not promoting her constitutes pretext. *See Heiko*, 434 F.3d at 259 (citing *Anderson*, 406 F.3d at 269) (stating that the Court must "assess relative job qualifications based on the criteria that the employer has established as relevant to the position in question").

Plaintiff offers no other argument or evidence to buttress her claim with regards to pretext.[10] She does not suggest any flaw in the interview panel's scoring system or dispute the

---

[10]    As the non-movant, Plaintiff has a duty to offer evidence establishing a triable issue and to cite to "particular parts of materials in the record" to support her arguments. Fed. R. Civ. P. 56(c)(1)(A); E.D. Va. Loc. R. 56(B). Although Plaintiff submitted some evidence with her response, including the Determination of the Equal Employment Opportunity Commission, she neither disputed Defendant's recitation of the facts, nor offered her own. (Pl.'s Resp. at 1-2 &

fairness of the panel's scoring results. In a factually similar case, the Fourth Circuit held that even if it assumed that the plaintiff had more experience than the candidate who was hired, "in the face of [the defendant's] nondiscriminatory — and unanswered — explanation for not promoting [the plaintiff], we must conclude that [the plaintiff] has failed to forecast sufficient evidence of pretext to avert summary judgment" in favor of the defendant. *Diamond*, 416 F.3d at 320 (citation omitted). And in the face of no iniquitous evidence offered by Plaintiff, it is the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993). Because Plaintiff fails to establish that Defendant's articulated explanation for its decision not to promote her was a mere pretext for discrimination, her claim must fail.

## IV.   CONCLUSION

For the reasons set forth above, the Court finds that Plaintiff failed to establish that Defendant unlawfully discriminated against her on the basis of her race and gender in violation of Title VII by declining to promote her. Accordingly, the Court GRANTS Defendant's Motion

---

Exs. 1-4.) Instead, despite Rule 56's clear requirements and her ample opportunity to propound discovery, Plaintiff reiterates and relies on the allegations in her Complaint (ECF No. 4) and her own assertions regarding Defendant's promotion process. (Pl.'s Resp. at 1-2.) Thus, she fails to raise a genuine dispute of material fact as required to overcome summary judgment on her Title VII claim.

(ECF No. 22).  An appropriate order shall issue.

The Clerk is directed to file this Opinion electronically and send a copy to *pro se* Plaintiff

at her address of record and to all counsel of record.

It is so ORDERED.

_____ /s/ _____
David J. Novak
United States Magistrate Judge

Richmond, Virginia
Date: April 30, 2015